IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Estelle Wilson, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 9:05-1047-HMH-GCK |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report of United States Magistrate Judge George C. Kosko, made in accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 DSC.[1] Estelle Wilson ("Wilson") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. In his Report, Magistrate Judge Kosko recommends reversing the Commissioner's decision and remanding the case for further proceedings. For the reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation and remands this case for further proceedings.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 14-23), and summarized as follows. At the time of the hearing before the ALJ, Wilson was a forty-three-year-old woman with a high school education. (Id. at 20.) Her past employment includes working as a nursing assistant and a mental health specialist. (Id. at 14.) She alleges disability due to chronic pain and swelling in her right arm, inability to lift or grip with her right hand, leg pain, hypertension, and depression. (Id. at 14.)

On December 31, 2002, Wilson filed an application for SSI, and she later filed an application for DIB on March 3, 2003. (Id.) The applications were denied initially and on reconsideration. On February 25, 2005, after a hearing on November 22, 2004, the ALJ found that Wilson was not disabled. (R. at 22.) On April 1, 2005, the Appeals Council denied Wilson's request for review. (Id. at 4.) Wilson filed the instant action on November 1, 2004.

## II. THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

Wilson contends that the ALJ erred in the following ways: (1) the ALJ's finding that Wilson could perform the numerous jobs listed by the vocational expert ("VE") was not supported by substantial evidence; (2) the ALJ's requirement that Wilson was restricted to doing low-stress jobs was deficiently vague and inconsistent with the hypothetical question he posed to the vocational expert; (3) the ALJ violated the treating physician rule; and (4) the ALJ failed to follow the two-part test for evaluating pain as required by case law in the United States Court of Appeals in the Fourth Circuit. (Report and Recommendation 10; Pl.'s Mem. Supp. J. 1-10.)

The Magistrate Judge considered only Wilson's first objection, concluding that first objection alone warranted a reversal of the Commissioner's decision to deny benefits and a remand for further proceedings. (Report and Recommendation 5.) The ALJ found that Wilson had "the residual functional capacity ["RFC"] of: lifting/carrying 20 pounds occasionally; lifting/carrying 10 pounds frequently; restricted to routine, repetitive tasks involving simple one to two step instructions; with a low stress environment; and with no public contact." (R. at 20.) Because the ALJ also found that she could not perform her past relevant work, the ALJ noted that "the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that she can perform, consistent with this residual functional capacity, age, education, and work experience." (Id. (emphasis added).) Moreover, a "vocational expert may be used to help determine whether or not there are a significant number of jobs in the national economy that the claimant can perform given her residual functional capacity and other vocational factors." (Id.) At the hearing, the VE testified and the ALJ found that Wilson could work as a material handler, stacker, bottle inspector, or linen grader. (Id. at 21.)

Wilson objected to the ALJ's conclusion that she can do any of these jobs, arguing that the ALJ's findings concerning Wilson's RFC prevented a finding that she was able to do these jobs as described in the Dictionary of Occupational Titles ("DOT"). The Magistrate Judge agreed, finding that "the VE was simply wrong in his identification of jobs available to the Plaintiff" due to the conflict between Wilson's RFC and the description of the jobs under the DOT. (Report and Recommendation 13.)

3

Accordingly, the Magistrate Judge recommends reversing the Commissioner's decision denying benefits and remanding the case to the ALJ for a new hearing to determine whether Wilson should be awarded DIB and SSI benefits.

### III. DISCUSSION OF THE LAW

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

#### B. Objections

Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Wilson filed no objections to the Magistrate Judge's Report and Recommendation. However, the Commissioner filed objections to the Report and Recommendation on March 15, 2006. Wilson replied to the Commissioner's objection on March 16, 2006.

The Commissioner objected only to the Magistrate Judge's conclusion that the ALJ erred in finding that Wilson could perform none of the jobs listed by the VE, arguing that the "ALJ properly determined that the Plaintiff retained the residual functional capacity to perform the job of linen grader." (Objections 1.) In support of her argument, the Commissioner contends that the ALJ had found that Wilson could do light, unskilled work, and, because the linen grader job is light, unskilled work, the ALJ did not err in finding that she could perform the job. (R. at 20; Objections 3.)

The Magistrate Judge concluded that the ALJ's finding concerning Wilson's RFC corresponds to a DOT reasoning level of 1, and the Commissioner did not object to this finding. (Report and Recommendation 12.) Further, the Commissioner acknowledged that the DOT lists the position of linen grader as requiring a reasoning level of 2. (Objections 3.) Hence, there is no objection that, under the DOT, Wilson is incapable of performing the linen grader job because she lacks the requisite reasoning level.

Rather, the Commissioner's objection is that the ALJ was required to ignore the DOT's developmental requirements for the linen grader job pursuant to Social Security Ruling ("SSR") 00-4p because the reasoning requirement was inconsistent with applicable regulatory policies and definitions. (Id. 3.) The Commissioner argues that the ALJ found that Wilson could do unskilled work, that the linen grader job was considered unskilled work under the

5

regulatory framework, and thus the ALJ was required to ignore the DOT evidence that suggests that Wilson could not perform the position.

> The relevant portion of SSR 00-4p, 2000 WL 1898704, at *4 (2000), is as follows:
>
> The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.
>
> Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.  For example, VE or VS evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work.  See 20 CFR 404.1568 and 416.968.

The Commissioner's interpretation of the ALJ's opinion and SSR 00-4p is incorrect.  The ALJ did not merely find that Wilson retained the RFC to perform unskilled work; the ALJ specified that Wilson's RFC allowed her to complete "repetitive tasks involving simple one to two step instructions."  (R. at 20.)  There is no dispute that unskilled work consists of jobs that match Wilson's RFC, which correspond to a reasoning level of 1 under the DOT, or jobs that require a reasoning level of 2 under the DOT, which is the "ability to apply commonsense understanding to carry out detailed but uninvolved written instructions." (Objections 3 (internal quotation marks omitted).)  In sum, while the ALJ found that Wilson could perform "essentially unskilled work," Wilson's RFC–as stated by the ALJ– limited the unskilled jobs Wilson could perform to those jobs requiring a reasoning level of 1.  Given the ALJ's finding of Wilson's RFC, SSR 00-4p does not permit the ALJ to merely ignore the DOT's reasoning requirements to find that Wilson can perform all unskilled work, including the linen grader job.

6

Regardless, even if the Commissioner were correct in her position that the SSR 00-4p required the ALJ to ignore the DOT's assignment of reasoning levels in order to find that Wilson could perform the linen grader job, SSR 00-4p prevents the Commissioner from doing so silently. As Wilson argues, SSR 00-4p requires the ALJ to "ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The ALJ is required to "[a]sk the VE . . . if the evidence he or she has provided conflicts with the information provided by the DOT; and [i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id. Beyond the hearing, the ALJ has a responsibility in addressing the conflict in his or her decision:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Id.

In the instant case, there is no question that the DOT would preclude someone with a reasoning level of 1 from doing the linen worker job. However, the VE testified that Wilson could perform that job. (R. at 290.) The ALJ did not ask if there were any conflicts between the VE's testimony and the information provided by the DOT, although the ALJ did ask if the DOT's job descriptions were consistent with how the jobs were performed in the national economy. (Id. at 287-91.) Moreover, there is no mention of the conflict in the ALJ's decision, much less the ALJ's reasoning resolving the conflict. For all of these reasons, the

7

court finds that the ALJ erred in finding that Wilson could perform the job of linen worker or, if the ALJ was justified in rejecting the DOT, in failing to explain the conflict between the DOT and the VE's testimony. Based on the foregoing, the court adopts Magistrate Judge Kosko's Report and Recommendation.

It is therefore

**ORDERED** that the decision of the Commissioner is reversed and this case is remanded to the ALJ for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

                                            s/Henry M. Herlong, Jr.
                                            United States District Judge

Greenville, South Carolina
April 5, 2006